UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BILLIE SUE CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:08-CV-277 |
| ) | (PHILLIPS/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's Motion For Judgment On The Pleadings [Doc. 11], and the defendant's Motion For Summary Judgment. [Doc. 15]. Plaintiff Billie Sue Carter seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

## BACKGROUND

Plaintiff was 55 years of age when the ALJ issued his decision (Tr. 42). She went to school through the eighth grade, and she has work experience in packaging, and prior to that as a cashier and assembly worker (Tr. 45, 118). She alleges that she has been disabled since August 21, 2005, as a result of back problems, Crohn's disease and carpal tunnel in both hands (Tr. 117).

## MEDICAL RECORD EVIDENCE

The relevant medical record evidence is summarized as follows:

An October 2002 MRI scan of plaintiff's lumbar spine showed a stress fracture of the vertebra, a partial slippage of the disc, marked degenerative disc disease at L5-SI, and L4-5 and L5-S1 arthropathy, but no significant narrowing of the spinal canal (Tr. 237).

Plaintiff saw Dr. Paul Wakefield in October 2005 due to Crohn's colitis (Tr. 205). She complained of back pain and stiffness, leg weakness after prolonged standing, bilateral thigh numbness, and left shin numbness (Tr. 205). She complained of pain on palpation of the lumbosacral spine, but no pain was produced on flexion of the spine (Tr. 205). Dr. Wakefield diagnosed lumbar radiculopathy and prescribed prednisone and hydrocodone-acetaminphen (Tr. 206).

At that visit, Dr. Wakefield completed a "Medical Opinion Form (physical)" (Tr. 260-62). Dr. Wakefield did not indicate any limitation in plaintiff's ability to sit, stand, or walk (Tr. 260). He opined that she could lift up to five pounds frequently, ten pounds occasionally, and 20 pounds maximum (Tr. 260). She could infrequently bend at the waist, reach above shoulders, and stand on a hard surface, but could frequently use hands for fine manipulation (Tr. 260). Dr. Wakefield indicated that plaintiff needed to rest 20 minutes of every working hour and could not be expected to work reliably due to her subjective limitations, missing four to six days per month (Tr. 261-62). He opined that plaintiff's pain was moderately severe and that it was reasonable to expect lapses in concentration or memory (Tr. 261).

Two months later, Dr. Jeffrey Summers performed a consultative examination of the plaintiff (Tr. 188-191). Plaintiff reported a six-to-seven year history of lower back pain that did not radiate, a 15-year history of numbness, tingling, and diminished grip strength in both hands, and a history of Crohn's disease which caused occasional cramping and bloody diarrhea (Tr. 188). On examination, Dr. Summers found full strength bilaterally in all major muscle groups, normal muscle tone, reflexes present and equal bilaterally, and sensation preserved throughout (Tr. 190). Lumbar range of motion was somewhat diminished, but straight leg raising was negative and range of motion was full in all other joint areas (Tr. 190). Grip strength was 4/5 bilaterally, manual dexterity and fingering abilities were intact, and Tinel's and Phalen's signs (for carpal tunnel syndrome) were absent (Tr. 190). Dr. Summers diagnosed the plaintiff with chronic back pain, mild bilateral carpal tunnel syndrome, and history of Crohn's disease (stable) (Tr. 190). He opined that plaintiff would have difficulty lifting more than 20 pounds and standing and walking more than six hours in an eight-hour work day, but that she should tolerate all other work related activities (Tr. 190). He advised that plaintiff avoid repetitive grasping, fingering, and manipulating objects with her hands, but opined that plaintiff would have no work-related restrictions due to Crohn's disease or any other gastrointestinal condition (Tr. 191).

Also in December, 2005, Dr. Robert Burr reviewed plaintiff's medical records. He concluded that she could lift up to 50 pounds occasionally and 25 pounds frequently, stand/walk about six hours in an eight-hour work day, and sit about six hours in an eight-hour work day. Dr. Burr further opined that plaintiff had no postural limitations or manipulative limitations (Tr. 192-199).

3

Plaintiff returned to Dr. Wakefield in January 2006 for medication refill and to discuss medications for Crohn's disease (Tr. 203). He diagnosed plaintiff with esophageal reflux, Crohn's colitis, hyperglycemia, and anemia (Tr. 203). He renewed the pain medication and prescribed Librax (for irritable bowel) (Tr. 204).

In March 2006, plaintiff returned to Dr. Wakefield, complaining of recurring numbness in the upper middle back. Plaintiff complained of tenderness on palpation of the cervical spine and pain upon motion, but Dr. Wakefield noted that range of motion was normal and showed no weakness. She had a spasm of the muscles at the thoracic spine. Dr. Wakefield diagnosed Crohn's colitis, backache, cervicalgia, and anemia. He renewed plaintiff's pain medication and prescribed a steroid dose pack and an anti-inflammatory (Tr. 201-202).

Plaintiff saw Dr. Mark Pritcher, a colleague of Dr. Wakefield, in July 2006 after an automobile accident. She reported pain in her right wrist, elbow, and shoulder, some tingling in her right thumb and first finger, and increased upper back pain. She had decreased range of motion of her neck, and her "usual chronic numbness to her knees [was] now going below knees." Dr. Pritcher diagnosed "anxiety with tingling in the hands and feet, first time ever in right hand, and worse in both legs than usual" (Tr. 270-271).

Three weeks later plaintiff saw Dr. Wakefield to "discuss menopause and problems with back and legs since auto accident" (Tr. 266). Her cervical range of motion was normal, but she had tenderness upon palpation of the shoulders. He diagnosed neck and shoulder strain, medial epicondylitis, disorder of the knee joint/patella/tibia/fibula, anxiety disorder not otherwise specified, and Crohn's colitis. He renewed plaintiff's medications (Tr. 266-267).

Plaintiff returned to Dr. Wakefield in November 2006, reporting neck pain radiating to the shoulder, neck stiffness, upper back pain, lower back pain radiating to the legs, and back stiffness. She reported no arm weakness, tingling, or numbness, but she reported tingling of both legs. Plaintiff reported tenderness upon palpation of her cervical spine but range of motion was normal and showed no weakness. She had muscle spasm at the thoracic spine. Dr. Wakefield diagnosed Plaintiff with neck pain, Crohn's colitis, lumbago, and anemia. He renewed plaintiff's medications and prescribed a muscle relaxant (Tr. 264-265).

## **TESTIMONY EVIDENCE**

At the hearing before the ALJ on June 20, 2007, the plaintiff testified that she left her last job as a packager for Carton Service because she got laid off (Tr. 45-46). She was called back to work, but she could not stand long enough to do the job (Tr. 46). She said that the Crohn's disease caused her to miss work about three or four days a month (Tr. 53).

Plaintiff stated that she had been having problems with her back for six or eight years (Tr. 46). Her treatment consisted of pain pills, lying down, and sitting (Tr. 46). She had bilateral carpal tunnel syndrome for 20 years, and over that period treatment had consisted of sleeping with braces on her wrists (Tr. 47). She said that her Crohn's disease sometimes flared up if she ate certain foods (Tr. 47-48). When she was working, she missed "quite a few days" due to Crohn's disease (Tr. 53).

Plaintiff testified that she slept five to six hours at a time, but every four hours she had to get up and stand because her legs became numb (Tr. 48). She no longer did embroidery due

5

to carpal tunnel syndrome (Tr. 48). She watched television, shopped for groceries with a riding cart, and did her own laundry (Tr. 48-49). Her family helped with grocery shopping and house cleaning (Tr. 49). She leaned against the wall when she showered and sat down when she dressed (Tr. 51).

Plaintiff estimated that she could sit 15-20 minutes at a time, and she could not stand at all without support but could stand 5-10 minutes at a time if she had something to lean on (Tr. 51). Plaintiff testified that it took her 25 minutes to walk from the parking garage to the hearing room (Tr. 51). She did not use a cane because she could not grip (Tr. 52). She could not lift her 28-pound grandson, even when in a sitting position (Tr. 52).

Plaintiff testified that pain medication made her pain bearable for about five hours at a time (Tr. 53-54). She had difficulty remembering "[s]tuff that happened yesterday" but no problem with long-term memory (Tr. 55). Sometimes when watching television, she forgets what she is watching (Tr. 56). She admitted to cocaine use in the past, but not during the last ten years (Tr. 55).

Ernest Brewer, Ph.D., a vocational expert, testified at a supplemental hearing held on August 29, 2007 (Tr. 22-26). He testified that plaintiff's past work as a cashier was light and unskilled (Tr. 23). The ALJ posed a hypothetical question to Brewer, directing him to assume an individual with plaintiff's vocational characteristics who could perform light work, with the following additional limitations:

> could only occasionally stoop or bend; could stand or walk up to six hours in an eight-hour day; had no specific limitations on sitting; and, should avoid repetitive grasping, fingering, and manipulating objects with her hands

(Tr. 25). Brewer testified that the hypothetical individual could perform Plaintiff's past relevant

6

work as a cashier, as well as many other jobs in the state and national economy (Tr. 25-26). However, Brewer then testified that an individual who needed a 20 minute break for every hour of work, and who would have four to six absences a month, could not perform any jobs (Tr. 26).

## **DECISION OF THE ALJ**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since October 7, 2005, the alleged onset date.

3. The claimant has the following severe combination of impairments: degenerative disc disease at the L5-S1 and L4-5 levels in the lumbar spine with spondylosis and Grade I spondylotheseis; Crohn's disease, which is stable with medical management; GERD with a hiatal hernia, which is stable with medication and diet; and bilateral carpal tunnel syndrome, mild.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except stooping and bending are limited to "occasionally" due to back pain; she may stand or walk up to 6

7

>                    hours during an 8 hour work day due to back
>                    pain; and she should avoid repetitive
>                    gripping, grasping, fingering, and
>                    manipulating objects with her hands due to
>                    mild bilateral carpal tunnel syndrome.
>
> 6.                 The claimant is capable of performing past
>                    relevant work as a cashier. The vocational
>                    expert testified that this work does not
>                    require the performance of work-related
>                    activities precluded by the claimant's
>                    residual functional capacity.
>
> 7.                 The claimant has not been under a disability,
>                    as defined in the Social Security Act, from
>                    October 7, 2005 through the date of this
>                    decision.

(Tr. 12-18).

The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 2-8). Therefore, the ALJ's decision stands as the Commissioner's final decision subject to judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## **STANDARD OF REVIEW**

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the

8

reviewing judge may have decided the case differently. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); and see Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the Court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## **ANALYSIS**

Plaintiff argues that the ALJ erred in finding that she retained the residual functional capacity to perform past work, because the ALJ did not give controlling weight to the limitations set out in Dr. Wakefield's Medical Opinion Form (Tr. 260-262). Plaintiff argues that Dr. Wakefield assessed certain limitations which, if given controlling weight by the ALJ, would have resulted in a finding of disability and the award of benefits. Specifically, the plaintiff cites the Court to Dr. Wakefield's assessment that the plaintiff would need 20 minutes of rest for each hour of work and 4 to 6 absences from work each month. Plaintiff objects to the ALJ's finding that these limitations were "unduly excessive in light of the weight of the medical evidence of record" (Tr. 15).

In addition, the plaintiff objects to the ALJ's finding that her statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible (Tr. 16).

The Commissioner asserts that substantial evidence supports the ALJ's residual functional capacity finding. The Commissioner argues that this finding was consistent with the

9

opinions rendered by the consulting doctor, Dr. Summers, and further, that Dr. Wakefield's assessment is generally consistent therewith, although his opinion on disability is exaggerated.

The Court finds that the amount of weight given by the ALJ to the opinion of Dr. Wakefield was appropriate. The ALJ may not assign controlling weight to a treating physician's opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir. 1997).

Consultative examiner Dr. Summers performed a thorough examination of plaintiff and specifically explained his findings and opinion as to plaintiff's limitations (Tr. 188-91). He opined that plaintiff could perform a limited range of work consistent with the ALJ's residual functional capacity finding. It was reasonable for the ALJ to accord Dr. Summers's opinion significant consideration as it was well-supported by the medical findings. On the other hand, the ALJ did state that his rejection of some of Dr. Wakefield's opinion was based on the lack of justification for it in the objective medical evidence, and his discussion of that evidence appears at Tr. 16-17.

Moreover, in completing the "Medical Opinion Form (physical)," Dr. Wakefield indicated no limitation in plaintiff's ability to sit, stand, or walk (Tr. 260). He opined that she could lift up to a maximum of 20 pounds (Tr. 260). These limitations exceed the regulatory definition of sedentary work, which involves lifting only up to 10 pounds and only 2 hours of standing/walking in an 8-hour work day. 20 C.F.R. § 404.1567(a); Social Security Ruling (SSR) 96-9p. Thus, it was

reasonable for the ALJ to find that Dr. Wakefield's opinion "listed restrictions consistent with a reduced range of light work" (Tr. 15).

The Commissioner is correct that even a treating physician's opinion must be supported by appropriate medical findings and consistent with the evidence to be entitled to significant weight. 20 C.F.R. § 404.1527(d); Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 652 (6th Cir. 2006). Dr. Wakefield's clinical examinations revealed little to suggest plaintiff was experiencing debilitating limitations. He documented plaintiff's subjective complaints, but he made few clinical findings. In the absence of meaningful clinical evaluation, it does appear that Dr. Wakefield based his assessment of plaintiff's limitations on plaintiff's subjective complaints. See McCoy, ex rel. McCoy v. Chater, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where claimant's subjective complaints unsupported by objective findings).

In addition, the conclusions of Dr. Burr also provide substantial evidence in support of the ALJ's decision.

Finally, the testimony of vocational expert Brewer provides substantial evidence supporting the ALJ's conclusion that the plaintiff could perform her past relevant work as a cashier.

Plaintiff also criticizes the ALJ's credibility assessment, but her arguments are insufficient to overcome the significant deference owed an ALJ's credibility finding. See Cruse v. Commissioner of Social Security, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight. . ."). In the present case, as in Cruse, the ALJ's credibility assessment was reasonable and the bases therefore were well articulated (Tr. 16-17).

11

Case 3:08-cv-00277-TWP-HBG Document 17 Filed 06/18/09 Page 11 of 12 PageID #: 70

The ALJ reasonably relied on the vocational expert's testimony to conclude that plaintiff could perform her past work, and a significant number of jobs, despite the limitations caused by her impairments. Substantial evidence in the record as a whole supports the ALJ's decision that plaintiff was not disabled.

Accordingly, I find that the ALJ properly reviewed and weighed all of the medical source opinions, the objective medical findings, and plaintiff's credibility to determine that she could perform her past work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that the plaintiff's Motion For Judgment On The Pleadings [Doc. 11] be **DENIED** and that the Commissioner's Motion For Summary Judgment [Doc. 15] be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).